IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ENRIQUE DAVILA-TORRES**

   **Plaintiff,**

      v.

**YESENIA FELICIANO-TORRES,**

   **Defendant.**

Civil No. 10-1933 (GAG)

### OPINION AND ORDER

Enrique Davila-Torres ("Plaintiff") brings suit against his supervisor, Yesenia Feliciano-Torres ("Defendant"), alleging violations of the First Amendment, Due Process Clause, Equal Protection Clause, Fifth Amendment, and various provisions of the Puerto Rico Constitution. (See generally Docket No. 6.) Plaintiff requests preliminary and permanent injunctive relief from further constitutional infringements, an aggregate of $2,000,000 in damages for pain and suffering, lost back pay and punitive damages, an award of pre-judgment interest, costs, fees, and "other and further relief as may be deemed proper." (Id.) Defendant filed a motion to dismiss Plaintiff's claims, (Docket No. 13), which the court denied (Docket No. 18). Defendant moves for summary judgment on these issues and, in the alternative, claims that the statute of limitations bars several of these claims and that Defendant enjoys qualified immunity. Plaintiff opposed the motion (Docket No. 70), and Defendant filed a reply (Docket No. 85). For the following reasons, the court **GRANTS in part** and **DENIES in part** Defendant's motion for summary judgment (Docket No. 55).

**I.   Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the

2

**Civil No. 10-1933 (GAG)**

non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.     Factual Background

The court reads the facts in the light most favorable to Plaintiff.  See Ortiz-Rivera v. Astra Zeneca LP, 363 Fed. Appx. 45, 48 (1st Cir. 2010).  The facts of this case began taking shape in the wake of the 2008 election of former Governor Luis Fortuño, a member of the New Progressive Party ("NPP").  Plaintiff, formerly employed as the Auxiliary Director I for the Office of Acquisitions and Contracts for the Commonwealth of Puerto Rico's Department of Transportation and Public Works ("DTOP"), alleges he endured a "work situation unreasonably inferior to the norm for the position he occupies."  (Docket No. 6 at 1.)  Plaintiff states that his "position had the duties of supervising the Purchasing, Contracts, and Auction sections" in a work atmosphere controlled by NPP supporters  (Civ. Case No. 09-1692, Docket No. 170-18 at 2-3.)  He claims he suffered a pay cut through elimination of travel allowances, curtailment of his supervisory duties, severe reduction of responsibilities resulting in Plaintiff working only one half-hour to one hour each day, and a refusal to participate in staff meetings because he is a member of the Popular Democratic Party ("PDP").  (Docket No. 70 at 3-4.)  Plaintiff openly acknowledges his affiliation with the PDP and served as a party coordinator.  (Docket Nos. 71-6 at 2; 71-4 at 5.)  Plaintiff proffers that his appointment as Auxiliary Director I was merit-based and had no impact on the Puerto Rico budget.  (Civ. Case No. 09-1692 (GAG), Docket No. 182 at 1.)

Defendant is the Director of the Purchasing and Contracts Office at DTOP, where she oversees all personnel transactions of all employees within her respective region.  Former Puerto Rico Secretary

**Civil No. 10-1933 (GAG)**

of Transportation Ruben Hernandez Gregorat appointed her to the position, and Plaintiff sues Defendant in her individual and official capacities. Defendant became Plaintiff's supervisor on November 9, 2009. Although Plaintiff admits he never discussed politics with Defendant, Plaintiff claims Defendant is a member of the NPP. (Docket No. 57-1 at 92-93.) Indeed, Defendant admits she is a member of the NPP. (Docket No. 57-8 at 146.)

Plaintiff first received notice that he was "no longer in charge of the office" on January 8, 2009, from Amilcar Ortiz, the Deputy Secretary for Administration. (Docket No- 57-1 at 20, 25.) Plaintiff also received written notice in October 2009 that Secretary Hernandez Gregorat sought to annul Plaintiff's "transfer from Legal Technician to Deputy Director because it had been done contrary to" Puerto Rico law, namely, a legislative initiative to curb the economic recession in Puerto Rico ("Law 7"). (Docket No. 57-1 at 21.) Plaintiff admits Defendant had no role in proposing the annulment, he had "very little" contact with Defendant's office prior to Defendant assuming a supervisory role in his department, and that he only spoke with her "two or three times" prior to working under her. (Docket No. 57-1 at 26.)

Plaintiff was stripped of his functions in front of the entire staff in January 2009 .and he received notice of an intent to annul his position on October 27, 2009. Defendant contends that the original notice of intent to annul, the alleged stripping of Plaintiff's functions, and the decision to annul Plaintiff's position occurred exclusive of Defendant's influence. (Docket No. 55 at 21.) Defendant claims, "The effects of [Puerto Rico's] Law 7, which caused reductions in personnel of different political affiliations, was to significantly reduce the number of personnel in the Purchases and Contracts Office . . ." (Id. at 25.) Secretary Hernandez Gregorat formally annulled Plaintiff's position on August 26, 2010, at which time Defendant purportedly petitioned for Plaintiff's removal. (Docket No. 70 at 3.)

**Civil No. 10-1933 (GAG)**

Indeed, Plaintiff brought a suit arising from the same set of facts against Defendant's predecessors and supervisors in 2009, ultimately settling in 2010.  (See Medina-Velazquez v. Hernandez-Gregorat, Civ. Case No. 09-1692 (GAG) (Sept. 10, 2012)).

Plaintiff states that, in an electronic message and a letter addressed to the DTOP Secretary on February 24, 2010, he informed the Secretary and Defendant, by carbon copy, that he demanded that he be assigned tasks commensurate with his position and identified discrimination as a motivating factor for the actions taken against him.  (Docket No. 57-1 at 95-100.)  He claims Defendant failed to respond to his correspondence.  (Docket No. 70 at 11.)  Plaintiff admits, however, that he did not levy a discrimination claim against Defendant at any point prior to the formal complaint in this case.  (Docket No. 57-1 at 95-100.)

Defendant, according to Plaintiff, "was made aware of the desire of [Defendant's supervisor] to remove Plaintiff's supervisory functions," and perpetuated this practice because the NPP sought to constructively oust Plaintiff to award his position to a loyal NPP member.  (Docket No. 70 at 3.)  Indeed, Plaintiff claims he informed Defendant's supervisor of his party affiliation by letter, which he purportedly gave to the Secretary's administrative assistant.  (Civil Case No. 09-1692 (GAG), Docket No. 170-18 at 82.)  DTOP employees, furthermore, frequently discussed party affiliation at work.  (Docket Nos. 71-1 at 15-20; 71-2 at 2-3.)  Plaintiff's co-workers ostensibly knew his political leanings, observing the difference in how his supervisors treated him when the NPP administration assumed leadership.  (Id.)

Defendant counters that she assigned Plaintiff several jobs in 2009 and 2010.  (See Docket No. 56 at 26-33.)  Plaintiff admits he carried out various tasks, including "reviewing Puerto Rico Supreme Court decisions, statutes, and regulations, and advising other attorneys and agency personnel

**Civil No. 10-1933 (GAG)**

of relevant new developments in the law . . .," developing "documents used for a contract application," providing "drafts of model contracts in the areas of contracts for professional services and service contracts," working "with digital format model contracts," working "with renewals of existing contracts," working on "security contracts," working with "model contracts for armed and unarmed services," evaluating companies' fiscal documents, drafting legal opinion letters, analyzing compliance documents, drafting professional service agreements, drafting contracts between DTOP and municipalities, working on purchase orders for leasing and renting motor vehicles, "performing legal analysis regarding the law for conservation of energy," working on a variety of security contracts, reviewing certificates of incorporation, working on local[] lease contracts, reviewing ethics laws, and performing other tasks. (Id.) In response to these assertions that Plaintiff undertook a variety of endeavors, Plaintiff writes: "Denied as drafted. It is admitted that [Plaintiff] did some work but the same was not substantially less then before . . ." (See Docket No. 71 at 12-17.) Plaintiff nonetheless claims that Defendant reduced his responsibilities to one-half hour of work each day. (Docket No. 71-6 at 7-8.)

The Secretary formally annulled Plaintiff's position on August 26, 2010, and Plaintiff brought this suit on September 27, 2010.

### III.    Discussion

    A.    Statute of Limitations

Section 1983 creates a private right of action for redressing abridgments or deprivations of federally assured rights, such as infringements on a citizen's First Amendment rights. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2006) (citing Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004)). Defendant claims Plaintiff's Section 1983 claims are time-barred. Section 1983

**Civil No. 10-1933 (GAG)**

claims abide state-created statutes of limitations. The parties agree that these claims enjoy a one-year limitations period pursuant to Puerto Rico Law. See P.R. LAWS ANN. tit. 31 § 5298(2); see also Santana-Castro v. Toledo-Davila, 579 F.3d 109, 114 (1st Cir. 2009). While also agreeing that federal law dictates the date of accrual of an injury, the parties dispute when the clock begins to run. Under federal law, the limitations period in a Section 1983 case begins when the plaintiff knows, or has reason to know, of the harm on which the action is based. See Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994) (citing Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992)). The parties dispute the accrual date because Plaintiff argues that Defendant's alleged actions constitute a continuing violation of Plaintiff's First Amendment rights, meaning "the statute of limitations begins anew with each subsequent violation." (Docket No. 70 at 13.)

The First Circuit instructively explained the "continuing violation" theory in Muniz-Cabrero:

> To establish a continuing violation, plaintiff must allege that a discriminatory act occurred or that a discriminatory policy existed within the period prescribed by the statute. There are two varieties of continuing violations: serial and systemic. Serial violations are composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate, [actionable] wrong. Plaintiff bears the burden of demonstrating that at least one discriminatory act occurred within the limitations period. It is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action. In other words, there is a critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake. Systemic violations, on the other hand, 'need not involve an identifiable discrete act of discrimination transpiring within the limitation period. Rather, what must be shown is that plaintiff has been harmed by the application of a discriminatory policy or practice and that such policy continues into the limitations period.

23 F.3d at 610 (internal citations omitted) (internal quotation marks omitted). The theory is "an equitable

7

**Civil No. 10-1933 (GAG)**

exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts" that require "some anchoring violation within the limitations period." Cordero-Suarez v. Rodriguez, 689 F.3d 77, 83 (1st Cir. 2012). The doctrine only applies to "discriminatory conduct that takes place 'over a series of days or perhaps years.'" Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2012)).

Plaintiff must first show "the actions that allegedly occurred within the year prior to the filing of the complaint . . . constitute[] separate and actionable Section 1983 violations." Muniz-Cabrero, 23 F.3d at 610-11. The "proper focus in continuing violation analysis is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Id. at 611 (emphasis in original) (internal citations omitted). The plaintiff "need not know all the facts that support his claim in order for countdown to commence." Morris v. Gov't. Dev. Bank, 27 F.3d 746, 750 (1st Cir. 1994). Alternatively, Plaintiff should identify a discriminatory policy or practice in effect during the statutory period to substantiate a systemic violation theory. Id. at 611.

The court preliminarily notes that Feliciano-Torres is the only defendant in this matter. Plaintiff alleges discrimination beginning in 2008 and early 2009, yet Defendant did not become Plaintiff's supervisor until November 2009. Defendant worked for DTOP Works ACERVO Office from 1999 until November 6, 2009. (Docket No. 56 at 2, 16.) Plaintiff fails to point to evidence that directly ties Defendant to any allegedly discriminatory act prior to Defendant's appointment as Plaintiff's supervisor. Plaintiff consistently references the allegedly discriminatory actions of Defendant's predecessor in this suit; however, Plaintiff already sued Defendant's predecessors and supervisors and entered into a

**Civil No. 10-1933 (GAG)**

settlement agreement. (See Medina-Velazquez v. Hernandez-Gregorat, Civ. Case No. 09-1692 (GAG) (Sept. 10, 2012) (Docket No. 198)).

While the court notes the settlement agreement does not bar claims against Defendant, Plaintiff nonetheless fails to demonstrate any direct link between Defendant and the claims asserted in Medina-Velazquez. Therefore, the court considers only the alleged discriminatory acts occurring when Defendant became Plaintiff's supervisor, taking over as the Director of the Purchase and Contracts Office at DTOP on November 9, 2009. (Docket No. 56 at 23.) To the extent Defendant's predecessors' and supervisors' alleged transgressions impact this litigation, they do so only in the context of Plaintiff's assertion that Defendant perpetuated a systemic discriminatory culture.

Plaintiff first received notice that he was "no longer in charge" on January 8, 2009, from Amilcar Ortiz, the Deputy Secretary for Administration. (Docket No. 57-1 at 20, 25.) Plaintiff also received written notice in October 2009 that Secretary Hernandez Gregorat proposed to annul "the transfer from Legal Technician to Deputy Director because it had been done contrary to" Puerto Rico law. (Docket No. 57-1 at 21.) Plaintiff admits he had "very little" contact with Defendant's office prior to Defendant assuming a supervisory role in his department and that he only spoke with her "two or three times" prior to working under her. (Docket No. 57-1 at 26.)

Plaintiff's specific allegation against Defendant, however, is that she "came after the originally [sic] stripping of the functions," but "continued the [discriminatory] practice despite knowing [P]laintiff held the position of Auxiliary Director I." (Docket No. 70 at 3.) This alleged continuation, combined with a refusal to assign Plaintiff supervisory tasks and the official annulment in August 2010, comprise the necessary deprivation within the requisite time frame to toll the limitations

9

**Civil No. 10-1933 (GAG)**

period.  See generally Agosto de Feliciano v. Aponte-Roque, 889 F.2d 1209 (1st Cir. 1989) .  This claim is both actionable and not time-barred; however, to reiterate, the court shall not consider any direct claims against Defendant accruing prior to her appointment as Plaintiff's supervisor in November 2009, as Plaintiff neglects to articulate why liability should be imputed to Defendant.

The object of the continuous violation doctrine "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Morales-Tanon v. P.R. Elec. Power Auth., 524 F.3d 15, 18-19 (1st Cir. 2008) (citing Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 801 (7th Cir. 2008) (Posner, J.)).  Allegedly consistent reduction in job responsibility over a period of several months exemplifies a redressable injury from which this cause of action was born.  See Torres-Santiago v. Mun. of Adjuntas, 693 F.3d 230, 242 (1st Cir. 2012) ("Whether the supervisory defendants' involvement [in reducing the responsibilities of plaintiffs in a political discrimination case] was simply the implementation of the policies of [a political party] by loyal lieutenants or involved those defendants' own decisions based on their own political animus was an appropriate subject for discovery.").  Purported acts of discrete discrimination occurred throughout the requisite timeframe; therefore, Plaintiff's claims are not time-barred.

  B. Qualified Immunity

Defendant raises the defense of qualified immunity to Plaintiff's claims.  (Docket No. 55 at 32-35.)  "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 51 (2010) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "The qualified immunity analysis has two parts.  A court must

**Civil No. 10-1933 (GAG)**

decide whether the facts shown by the plaintiff make out a violation of a constitutional right and whether the right was 'clearly established' at the time of the alleged violation by the defendant." Id. (citing Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)). "Whether defendants are entitled to qualified immunity 'is a legal question for the court to decide.'" Id. at n.10 (quoting Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 78 (1st Cir. 2006)).

At the outset, the court notes that Defendant merely recites the governing doctrine for qualified immunity analysis and neglects to cite any precedent specifically supporting her request relevant to the facts of this case. Defendant contends that she satisfies the first prong of qualified immunity analysis because "Defendant is entitled to summary judgment" concerning all of Plaintiff's claims. (Docket No. 55 at 34.) This is Defendant's only argument substantiating the first prong of qualified immunity analysis; therefore, the court necessarily must grapple with the constitutional question before concluding whether Defendant is entitled to qualified immunity.

For the sake of orderly analysis, the court will pull back the curtain and spoil the ending for the reader: for nearly a quarter of a century, First Circuit precedent has clearly established that reduction in responsibility, when alleged under the auspices of political discrimination, violates the First Amendment; thus, the court does not afford Defendant qualified immunity and shall proceed to consider whether to summarily dismiss Plaintiff's case. Torres-Santiago, 693 F.3d at 242; see generally Agosto de Feliciano, 889 F.2d at 1219. In Acevedo-Garcia v. Vera-Monroig, the First Circuit stated, "By applying the Agosto-de- Feliciano standard, the [district] court implicitly concluded the right of the plaintiffs to be protected from politically-motivated changes in work conditions and responsibilities was established clearly enough to reject the qualified immunity defense of the defendants." 204 F.3d 1, 6 (1st Cir. 2000). Although the

11

**Civil No. 10-1933 (GAG)**

circuit court indicated defendants might have merit in appealing that holding, they refrained from reaching the issue. Id. The court concurs with the district court in Acevedo-Garcia. Puerto Rican citizens, especially those cloaked with political power, must respect the Constitution.

  C. Political Discrimination under the First Amendment

  The First Amendment protects non-policymaking public employees from adverse employment actions based on their political affiliation. See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). A *prima facie* case of political discrimination requires evidence that: (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) an adverse employment action occurred, and; (4) political affiliation was a substantial or motivating factor behind the challenged employment action. See Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007); Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006).

  Plaintiff "must point 'to evidence on the record which, if credited, would permit a rational fact-finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.'" Gonzalez-de-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004) (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996)). Additionally, the plaintiff "must make a fact-specific showing that a causal connection exists between the adverse treatment and the plaintiff's political affiliation." Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990)).

  If the plaintiff proves his *prima facie* case, the burden shifts to the defendant to articulate a

**Civil No. 10-1933 (GAG)**

nondiscriminatory ground for the adverse employment action and establish, by a preponderance of the evidence, that the same action would have been taken regardless of the plaintiff's political beliefs. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) ("Mt. Healthy Defense").  In response, "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor."  Padilla-Garcia, 212 F.3d at 77 (internal citations omitted).  In the end, "[s]ummary judgment is warranted 'only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment action.'" Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009) (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

        1.    Plaintiff's *Prima Facie* Case

Plaintiff alleges facts that satisfy the first three prongs.  As previously established, Plaintiff and Defendant affiliate with different political parties.  Defendant disputes that she knew Plaintiff's political affiliation; however, taken in the light most favorable to Plaintiff, the testimony of Plaintiff's colleague, Vanessa Torres Hernandez, reveals that conversations concerning political parties frequently occurred in the workplace, "people sa[id] things" regarding their party affiliation, and the deponent was aware of Plaintiff's political affiliation. (Docket No. 71-1 at 14-16.)  Politically charged employment atmospheres "occasioned by the major political shift from the NPP to the PDP [and vice versa] . . . coupled with the fact that plaintiffs and defendants are of competing political persuasions[] may be probative of discriminatory animus." Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993).  This alleged atmosphere, combined with Plaintiff's accusation of a reduction in responsibility, the email from

**Civil No. 10-1933 (GAG)**

Plaintiff to Defendant and her supervisor in which he complained of a reduction in responsibility, and Plaintiff's letter informing Defendant's supervisor of his political affiliation (Civil Case No. 09-1692 (GAG), Docket No. 170-18 at 9) constitute sufficient circumstantial evidence to mollify any concerns over a lack of direct evidence that Defendant knew Plaintiff's political affiliation. "Where there exists a relatively small community where most everyone knew who everyone else was and political affiliations were common knowledge . . . a reasonable jury could conclude that Defendant[] knew of Plaintiff's political affiliations." Torres-Santiago, 693 F.3d at 237. The court agrees – where political affiliations are "well-known" within a municipality and its employees, it is appropriate for a court to proceed to the third prong of political discrimination *prima facie* analysis.

Thirdly, to reiterate, Agosto de Feliciano and its progeny establish that the harm Plaintiff alleges comprises an adverse employment action. 889 F.2d at 1219.

The fourth prong requires elaboration because the record does not clearly indicate if Plaintiff's political affiliation substantially motivated Defendant's actions. The substantive allegations that Plaintiff levies in his complaint are as follows: (1) Defendant "has consistently stripped the plaintiff of his functions, allowing him to perform only a minimal portion of them (approximately 5%); (2) "Defendant would not allow [P]laintiff to attend meetings and, either in writing or verbally, instructed [P]laintiff's subordinates to report directly to the regional directors," and; (3) Defendant disregarded Plaintiff's e-mail dated February 24, 2010, in which he expressed his discontent with a reduction in responsibility. (See Docket No. 6 at 3-4.)   In opposing Defendant's motion for summary judgment, Plaintiff elaborates by claiming: (4) Defendant "was made aware of the desire of [Defendant's predecessor] . . . that [Plaintiff] was not to perform supervisory functions as Auxiliary Director I position"

14

**Civil No. 10-1933 (GAG)**

and continued the discriminatory practice; (5) the "new administration wanted this position for fellow members of the [NPP]," and; (6) Defendant "petitioned for [Plaintiff's] removal from the area." (See generally Docket No. 70.)

These allegations and their corresponding submissions round out Plaintiff's *prima facie* case. Defendant's supervisor supposedly knew Plaintiff's political affiliation and Defendant discussed office operations with him. Defendant rarely, if ever, spoke to Plaintiff. Plaintiff worked a half-hour to one hour of the time he was at work. The administration had recently changed from the PDP to the NPP. Plaintiff's colleagues observed a difference in treatment upon the administration change. Circumstantial evidence such as this "is relevant to whether political affiliation was a substantial or motivating factor in that adverse employment decision." Torres-Santiago, 693 F.3d at 240. As the First Circuit frequently reiterates, smoking gun poof of discrimination is rarely available. See, e.g., Grajales v. P.R. Ports Auth., 682 F.3d 40, 49 (1st Cir. 2012) (citing Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 17 (1st Cir. 2011)); see also Rodriguez v. Mun. of San Juan, 659 F.3d 168, 176-78 (1st Cir. 2011) (discussing similar situations in which the trial court appropriately found that plaintiffs satisfy the fourth prong). Therefore, Plaintiff sufficiently presents a *prima facie* case of political discrimination.

2. Defendant's Burden and Plaintiff's Reply

Next, the court assesses whether Defendant carries her burden and articulates a nondiscriminatory ground for the adverse employment action and establishes by a preponderance that the same action would have been taken regardless of the Plaintiff's political beliefs. There is no doubt that the Secretary attempted to annul Plaintiff's position before Defendant assumed a supervisory role over Plaintiff, and that Defendant's superiors and predecessors set in motion the chain of events which resulted in the

15

**Civil No. 10-1933 (GAG)**

stripping of Plaintiff's functions and ultimate annulment. Indeed, "from 10 to 15 people were laid off" in Defendant's office due to the implementation of Puerto Rico's Law 7. (Docket No. 57-8 at 32.) Defendant's answer to Plaintiff's allegations of reduction in responsibility is that, simply, Plaintiff misstates the truth when he claims he only worked one-half hour to an hour each day because he admits he performed a variety of tasks.

Defendant states, "Any claim by Plaintiff that he was without any work is" contradicted "by the extensive summary judgment record and [P]laintiff's own admissions of the varied sorts of work and many different tasks that he was responsible for . . . ." and that Defendant, in fact, "gave [Plaintiff] additional duties, including in extremely sensitive areas . . . ." (Docket No. 55 at 21.) Plaintiff refutes Defendant's Mt. Healthy Defense and disputes these facts, as alleged, supporting his contention that he was treated differently and worked only five to ten percent of the day with testimony from colleagues. If Defendant actually reduced Plaintiff's responsibilities and assigned him work that occupied only one hour of his time each day, "it calls into question [DTOP's] . . . rationale . . . that positions were eliminated to save departmental resources" under Law 7. Acosta-Orozco v. Rodriguez de Rivera, 142 F.3d 97, 103 (1st Cir. 1997). The court sees merit in both arguments, the resolution of which requires weighing the facts. Therefore, summary judgment for Defendant is **DENIED** as to Plaintiff's First Amendment claim.

D.  Due Process

Plaintiff invokes procedural due process in alleging a constitutional process violation. (Docket No. 70 at 23.) A procedural due process claim brought pursuant to Section 1983 requires a deprivation of a property interest by defendants acting under color of state law, without constitutionally adequate process. See Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (internal citations omitted). The

**Civil No. 10-1933 (GAG)**

court recites Plaintiff's entire sixty-two word Due Process argument verbatim:

> The case law establishes that there is a due process violation if a career employee is demoted, de facto or de jure, without a hearing. The plausible facts plausibly assert that the plaintiff was not afforded a hearing on the personnel actions taken against him, as such a clear violation of Due Process. The defendants requested that these causes of actions should be dismissed should be denied [sic].

(Docket No. 70 at 23  (internal citations omitted).)

Plaintiff unquestionably has a property interest in continued employment.  Marrero-Gutierrez , 491 F.3d at 8 ("[I]t is undisputed that under the laws of Puerto Rico, career or tenured employees have property rights in their continued employment.").  Defendant cites persuasive case law suggesting that Plaintiff has no property interest because he was not terminated and Defendant never reduced Plaintiff's salary.  See Rodriguez-Pinto v. Tirado-Delgado, 798 F. Supp. 77, 83 (D.P.R. 1992), aff'd on this ground, 982 F.2d 34, 41 (1st Cir. 1993).  The court agrees with this assessment and also concludes that no unlawful deprivation took place.  Lawful deprivation of a property right requires notice and an opportunity for a hearing.  Cepero-Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005).  The employee must "receive notice of the charges, an explanation of the evidence that supports these charges, and the ability to refute that evidence."  Marrero-Gutierrez, 491 F.3d at 8 (internal citations omitted).  Plaintiff received notice in October 2009, attended a hearing in February 2010, knew that Defendant's supervisors invoked Law 7 as justification for the annulment, and received an official annulment in August 2010. (See Docket No. 57-1 at 20-21, 47-54.)  By Plaintiff's own admission, his process unfolded in this manner.  (Id.)  Therefore, the court **GRANTS** Defendant's summary judgment motion as to Plaintiff's Due Process claim.

**Civil No. 10-1933 (GAG)**

    E. <u>Equal Protection</u>

The court turns to Plaintiff's argument that Defendant violated the Fourteenth Amendment's Equal Protection Clause. Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment. <u>Marrero-Gutierrez</u>, 491 F.3d at 9 (internal citations omitted). Plaintiff must demonstrate that he was selectively treated, based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure. <u>Id.</u> Analyzing an Equal Protection claim entails determining "whether an objective person would see two people similarly situated based upon the incident and context in question." <u>Id.</u> (citing <u>Rodriguez-Cuervos v. Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 21 (1st Cir. 1999)).

Plaintiff, again, offers no legal justification for finding an Equal Protection violation, except for stating, "Plaintiff is part of a class of persons namely members of the PDP . . . [who] was treated differently as described above to set forth a discriminatory pattern." (Docket No. 70 at 22.) Plaintiff merely states the facts comprising the alleged harm in his complaint and, in his reply to Defendant's motion for summary judgment, only argues that litigants may concurrently submit claims for Equal Protection and First Amendment violations arising from the same set of facts. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). The court elects not to play Mad Libs with a constitutional question by making Plaintiff's constitutional argument for him.

Even still, First Circuit precedent indicates that our circuit discourages concurrent First Amendment and Equal Protection claims when the underlying facts giving rise to both claims

18

**Civil No. 10-1933 (GAG)**

substantially overlap. See Nestor Colon Medina & Sucesors, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992);[1] see also Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) ("The equal protection claim also founders, as it is a mere restatement of appellant's failed First Amendment claim."). Therefore, the court **GRANTS** Defendant's motion for summary judgment regarding Plaintiff's Equal Protection Clause argument.

    F.  Pendent State Claims and Fifth Amendment Claim

Defendant moves for summary judgment concerning Plaintiff's claims rooted in Puerto Rico law by presuming that the court will grant summary judgment on Plaintiff's federal claims. Because the court denies Defendant's motion as to Plaintiff's First Amendment claim, Defendant's argument fails. Additionally, Plaintiff clarifies that he cites the Fifth Amendment as a part of his other claims, not a distinct claim for the court to consider. (Docket No. 70 at 23-24.) Therefore, Defendant's motion for summary judgment as to the pendent state claims is **DENIED** and the Fifth Amendment argument is **MOOT**.

**IV.  Conclusion**

For the reasons stated above, the court **GRANTS in part** and **DENIES in part** Defendant's motion for summary judgment. (Docket No. 55.)

    **SO ORDERED**

---

[1] The First Circuit stated, "Here, [Plaintiff] has no need for protection under the [E]qual [P]rotection [C]lause. His equal protection theory is simply that, in addition to violating his First Amendment rights, the . . . [retaliation] for his political expression violated his equal protection rights as well. Given the overlap of these claims, and the vast problems that would be created, we see little basis or justification for applying equal protection analysis in the present situation." 964 F.2d at 45.

**Civil No. 10-1933 (GAG)**

    In San Juan, Puerto Rico this 20th day of February, 2013.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge
